In this case, there are three reasons why the waiver of appeal contained in the plea agreement is invalid. The first is that, on the record, at sentencing, the judge orally contradicted the appeal waiver by advising my client that he had the opportunity to appeal under three various or four, excuse me, scenarios that would, if he believed that the plea was involuntary, which we assert that it was, if he felt that there was some other fundamental defect in the proceedings, which we also assert existed, he assert the judge advised my client that there was a statutory right to appeal under certain circumstances which he did not specify, and if he felt that the waiver was unenforceable. At the change of plea, my client, who was speaking through a Vietnamese interpreter, was only asked one question, do you understand your waiver of appeal, to which he replied yes. That's the only discussion at the change of plea as to his waiver of appeal. In addition, my client's plea was not intelligent and voluntary because he was not informed of the vast change in the law under the guidelines now under Booker and following his sentencing, and also the primary issue of this appeal, which is that the district judge in this case did not disclose at the change of plea to my client or to his defense attorney at the time, who was not me, that he had a deep, unavoidable, inescapable bias against the defendants in this case because of the judge's recollections of the case 6 years earlier that had been tried in front of him when Mr. Lam, the individual who hired the hitmen to kill this individual, Mr. Tri Tran, and who ultimately approved the firebombing of his home, when that man was tried for murder, Judge Shove sat as the case. And 6 years later, and Judge Shove is a very experienced judge, he sat on the bench 13 years by the time this case came forward, he had never denied a government recommendation for a 5K motion up until that time. But at the change at the sentencing hearing that took place that ultimately was aborted and did not result in the sentencing of my client, that sentence that first attempted sentencing hearing, Judge Shove said he probably should recuse himself, and I submit to this Court that under the plain error standard, when a judge says, and he says it again at the actual sentencing hearing on June 2nd, that he should or probably should have recused himself, that that is a situation that calls into question the neutrality and fairness of the proceedings and of the judicial officer, and therefore, it is – satisfies the standard for plain error for – and also requires this Court to send this case back to a different judge. Now – Roberts-Governor, it sounds to me like your argument is almost Judge Shove made the decision. I mean, Judge Shove says, I'm not going to give this defendant a break because in comparison to other defendants who were involved in this case, he was as bad, if not worse. Isn't that what he – what he is saying? Your Honor, if under Booker, if this had – this case had been sentenced with the knowledge of Booker and this Court were looking at it to see if the sentence was reasonable, the findings that Judge Shove made that led him to make that determination that the Court just said were unreasonable under various grounds. The first one is that the 5k factors the Court is supposed to consider do not include how terrible the crime was or the role of the defendant. And in fact, I'm sure this Court sees many times, the most culpable defendant sometimes gets the 5k because they know the most information, they are the most helpful. And yet, the factors that this Court found in the Auld case that the Court is supposed to consider are about the nature and quality of the cooperation, how much assistance was given. And in making that – those determinations, the Court is required to give substantial weight to the government's recommendation, the government's determination. He's not supposed to rubber stamp, but I mean, it's not a – it's not a notice, it's a motion. So I mean, the judge can grant it or deny it in his discretion. But in this case – but the judge is supposed to exercise his discretion. He did. According along the lines suggested in the guidelines and along the lines held by this Court in Auld, the Court completely disregarded and disbelieved, without any evidence and without any basis, what the government was saying. And in fact, lumped the government in with the defense team, which he excorciated them on several opportunities to say that they were all working together. This judge would – I'm sure you can see by the transcript that Judge Shove was very concerned about the determination made by the government, partly because the government had presented a defendant prior to my client being sentenced who had already – who had been indicted once as an accessory after the fact, and then later, when new information came in that implicated him as, in fact, a principal and indicated that he had lied about his involvement, that he had actually been present the night of the bombing and had been the person to drive them there and held the bottles and filled the bottles with gasoline and was either he or my client through the firebomb that ignited. And both of those two men pointed the finger at each other. But – so when that man was reindicted as a principal, he then cooperated and the government recommended a 5K for him as well. And Judge Shove gave him 17 years. And he basically said, I believed him and I gave – sort of like he had been tricked. I believed him and I gave him 17 years, and so I can't possibly give this other guy who says something different about one fact a break as well. I have to choose between them. And that was unreasonable. The Judge – 5K does not require the judge to choose between defendants. It also – although the judge is allowed to evaluate their credibility, it's unreasonable for the judge to make a finding of credibility based on no evidence. There was no evidence following the rules of evidence as required in Buckland that was presented. It was simply a hearsay statement by two different people saying he did it, pointing the finger at each other. And in fact, the government attorney, Mr. Malikian, was there at that sentencing hearing. He and Mr. Lapham informed the judge that they couldn't determine which man threw the firebomb. And the other individual who had been there that night did not see because he was busy pouring gasoline around the perimeter of the house and on the porch. The judge's finding that what my client did, that his involvement was as bad as the two individuals that got life, that is also a finding that's unreasonable. The first man that got life is Mr. Lamb. It was his idea. He paid people. He hired people to make the hit. He incited the entire event. I'm sure everyone would agree that he was perhaps the most culpable. The second individual who got life was the person who was pouring the gasoline around the perimeter of the house, who masterminded the arson, who recruited all the other individuals, who paid them, and who received money directly from Mr. Lamb. So he is the lieutenant. He's the top actual person involved in the arson and masterminded all of the events that occurred. My client came in last. He was recruited at the very end. He had no involvement in the first attempt to – oh, and by the way, the second man to get life, he fired twice in two different occasions at the intended victim, trying to kill him with a gun. So he – my client's participation, even if he did throw – excuse me – the Molotov cocktail that ignited the blaze, that ignited the gasoline that had already been poured around the house, that – it's unreasonable to find that my client's participation that  I'm sure you're right. Excuse me. Did you just say that someone who throws a Molotov cocktail in a house that's been laced with gasoline is not as culpable as the person who puts the gasoline around? Did you just say that? Your Honor, the person who poured the gasoline is the person who planned it, who said, let's set fire to the house. We'll go to the gas station. We'll fill up these bottles. You come with us. We'll pay you. Hire – recruited the people to do it. Said let's do it now. Told them what to do. So Judge Shub's reaction is the reaction that you just had, that at the moment somebody throws something, that's what started it. Not that. It's not that. You're arguing reasonableness and you haven't even addressed the waiver of the right to appeal, which is my stumbling block here. But it's – really, that isn't what he said. He said that your client was the one who was the last person to be able to exercise his free will not to throw the Molotov cocktail into the house with the result of killing a child. He's saying your client could have said, I'm not going to do this, but he did it, and he's the one who's responsible for the death of that child. He made that finding based on no evidence. My position is that that finding itself is unreasonable. He made that finding based on – Which part of it? Because the finding that my client threw the bottle. My client has denied from day one that he was the one who threw the bottle. He was the passenger. He was handed – he wasn't even holding everything. He was handed a bottle as the driver got out of the car, came to his door, handed him a bottle, and they both got out – or I think my client is holding – I'm sorry. My client is holding the bottle while the driver is driving. The driver gets out, and my client says he handed the bottle to him. The driver says that he saw my client throw it. This is the same – They said Schrebb made a credibility finding that your client was the one not telling the truth. Based on no evidence. He didn't have the individuals testifying before him. This was hearsay that was presented just as a statement that was made to the probation officer and, by the way, by the person who had previously lied to the government in a debriefing, who had an extensive debriefing with the government based upon which they had made an earlier recommendation of a low sentence. But then they re-indicted him when they found out that he was lying. That's the person who Judge Schrebb believes. When you're over your time, I just want you to respond to the argument that we shouldn't even be here because your client waived his right to appeal. As I just briefly said at the beginning when I first stood here, that he – if an individual enters a plea and the judge does not disclose his bias and the fact that he should be recused in the case, that is an involuntary plea. That is an unintelligent plea. Then at sentencing, Judge Schrebb – there's a case that specifically says if the judge says that you have a waiver of appeal – that you have appeal rights, then your waiver of appeal has been contradicted by the judge and it creates a reasonable expectation of the right to appeal and that people are allowed to rely on the proclamations of judges at sentencing. And Judge Schrebb says to him in a very long, convoluted – several times says in different ways that he has different possible reasons for having the ability to appeal and therefore he's going to tell him how long he has until he can file an appeal. And also, in the meantime, Blakely and Booker came down and an individual entering a plea to a plea agreement that explicitly says that the judge shall sentence within the guideline range unless the judge finds and lists the language for departure, which is now no longer true, and it controls this case because this case is still pending on appeal during the time that that case came down. That is another reason why his waiver was ineffective, why his waiver was unintelligent. Thank you very much. Good morning, Your Honors. May it please the Court, my name is Ken Malikian. I'm an assistant U.S. attorney for the Eastern District of California, and of course I represent the United States in this matter. I'd like to start, though I hadn't planned on it, with the area counsel just left off regarding the waiver of appeal. It's clear that in the plea agreement, there was a clear waiver of appeal by the defendant. And in the Rule 11 exchange with the Court, the Court went over that with the defendant and the defendant agreed that he waived his right to appeal. These waivers of appeal, it's clear they're generally enforceable, and counsel has tried to resurrect appellate rights through two avenues. One is the Buchanan case, where after a waiver of appeal, a defendant was told by the court that you have a right to appeal, unequivocally informed that you have a right to appeal, which was in pure contradiction to the waiver in the plea agreement. That's not the situation we have here. The Court has two options. One is just say you waived your right to appeal, and that's that. And you've got a defendant who knows nothing more than that. The second is to do what Judge Shove did and says that you have waived your right to appeal. And I'm quoting, those waivers are generally enforceable, but if you believe the waiver is unenforceable, you can present that theory to the appellate court. He is informing the defendant, I think to the defendant's benefit, that even though you've waived your rights, who am I to say that it's an absolute waiver that cannot be pursued. If you think that you have a right to appeal, you can try to present that to the appellate court, and it's up to the appellate court to determine whether or not they should hear your appeal. I would submit this doesn't resemble the Buchanan case in any way, shape, or form. Judge Shove correctly informed the defendant that your rights are gone, but if you and they'll decide whether or not you have your appellate rights. What's your answer to Ms. Lubin's point that Judge Shove made a finding about who threw the Molotov cocktail without competent evidence to do that? Your Honor, let me specify a little bit before I answer your question what the evidence was. There wasn't one Molotov cocktail in this case. There were at least two. That's in the plea agreement. That came out in the facts of this case during the jury trial of Mr. Lamb. There were two or more Molotov cocktails that were thrown. Mr. Kwok Pham has indicated or did indicate that the defendant threw the Molotov cocktails. The defendant claims that Kwok Pham threw the Molotov cocktails. The one person, and I believe this is in the record at the sentencing hearing, excuse me, whom the government had full confidence in believing was the third person who was there and was pouring the gasoline, who came clean from the very beginning. And he said, unfortunately, while I was pouring the gasoline, I can't tell, excuse me, which of these two gentlemen threw the Molotov cocktails or if they both threw them. I would submit to the court that as there were multiple Molotov cocktails, it's entirely possible, in fact, even likely that they both threw at least one Molotov cocktail. Judge Shove found that the defendant threw a Molotov cocktail. He was entitled to do that with the record that was before him, but I would submit to the court that even if he hadn't, even if the defendant had not thrown the Molotov cocktail, that doesn't mean that he could not be sentenced to life. No, but if he bases it on a, if he makes an assumption that isn't correct, that's, we have a problem there. If the basis, if the rationale for his decision is that he threw the Molotov cocktail and he's, if that turns out to be false or unsupported, then what do we do about that? Well, this is a 5K situation, Your Honor, and 5Ks are generally, excuse me, unreviewable. And that is one factor that goes into a determination whether or not a 5K motion is granted. And I would submit to the court that whether both defendants threw the Molotov cocktails, whether Kwok fanned through both of them, whether Tewtrong threw both of them, it is just one factor that goes into a nonreviewable decision by the judge as to whether or not to grant the 5K motion. I would submit to the court that you have a heinous crime. And even if a person actively partook in that crime but did not actually throw the Molotov cocktail, that person can be sentenced to life. Counsel does not quarrel with the fact that this is a heinous crime. In fact, she claims that because the judge knew too much, he should have recused himself. This crime was a horrible crime. This crime was a crime that the judge knew a lot more about than a typical case. This was the fifth defendant to come before the court in this case, the seventh year after the case first saw light in the court. Tam Lam had a six-week jury trial that resulted in a hung jury. He eventually pled guilty. Defendants Kwok Pham and Tewtrong Pham pled guilty. Defendant Tewtrong Kwok was charged with being an accessory after the fact. He pled guilty. So by the time this got to Judge Shove, he was exceedingly familiar with the facts of the case from four prior guilty pleas and one six-month trial. I want to discuss briefly the assertion regarding the photograph that was shown in the court and the allegation that that might cause bias. The judge stated that he saw a photograph, and he stated photograph in the singular. I brought with me and shown to counsel the photograph that the government used in its opening statement and in its closing argument. It was labeled Government's Exhibit No. 14 for identification at the trial. And there's no question but that the court saw this picture as a picture of the young girl who perished in the fire. There's nothing in the record to indicate that autopsy photographs were shown to the court. I would submit that it doesn't make any difference even if they were. A judge after seeing autopsy photographs can still exercise a fair and independent judgment as to a defendant's participation in a crime. But bottom line is, is that we have a situation where bias is claimed when bias is not actually the, excuse me, where bias has not actually been exhibited. What we have is a court who is exceedingly familiar with a crime, a horrible crime, and he's decided that despite the government's recommendation that the defendant should receive a benefit for cooperation, he's not going to give it. Now, reasonable minds can differ. Another judge may have decided that the government's motion was proper, but we want judges making determinations for 5K motions, not the government. That's how the guidelines are written, and that's what the law is. Every defendant who pleads guilty, including this one, where there is a 5K issue, is informed that the judge is going to make the decision. This defendant was informed on two occasions when he pled guilty that the judge could sentence him to life in prison. The plea agreement stated that the court was not a party to the government's agreement, and that the defendant could be sentenced to life in prison. Even after the first sentencing hearing, when Judge Shudd made his feelings known that he was not inclined to follow the government's 5K motion, the defendant didn't bring a motion for recusal or anything similar to that. The bottom line is, as counsel below recognized, the courts make these decisions. The court was very informed as to the facts of this case, and he decided that in this rare case, it was not appropriate for him to grant the motion. I want to very briefly, and I've only got a little bit over a minute left, discuss the issue of the Booker remand. I would submit that though Booker was decided subsequent to the filing of the appellate briefs, and certainly before the appeal is final, that a remand on Booker grounds would not be appropriate. The en banc Booker court stated specifically that only when it cannot be determined from the record whether the judge would have imposed a materially different sentence, had he known the guidelines are advisory rather than mandatory, will the Booker limited remand apply. And this is one of those cases where it is crystal clear that even if Judge Shudd had known that the guidelines were advisory as opposed to mandatory, he would have done the same thing. First point to make is that the appropriate guideline range was 30 years to life. Even as it then existed, the judge knew that he had the authority under the guidelines, which he deemed to be mandatory, to sentence the defendant to a term of imprisonment of only 30 years. He clearly rejected that and sentenced the defendant to the top end of the guidelines to with life. Secondly, in addition to declining to sentence the defendant to 30 years, he, as we know, declined to grant the government's 5K motion and determined because of the gravity of this offense that the defendant deserved a life sentence. It is clear that Judge Shudd, had he had a crystal ball and known what was coming in Booker, would have done the exact same thing. If this case is remanded for limited Booker review, then every single case that comes before this court will have to be remanded. It is indeed one of those where the record could not be clearer as to what the judge would have done had he foreseen Booker. Thank you. Roberts. Thank you very much, Mr. Wilken. Ms. Lohmann. That is correct. Judge Shudd did make pretty clear on the record what he wanted to do in this case. But that – but leaving that untouched assumes that this Court approves any determination that a judge makes, whether it's made on no evidence, whether it's made on the emotions of the judge, contrary to the facts that are before the judge. If there are no – if there's no evidence before the judge, then there's no basis for the judge to make the finding. And Mr. Malikian has just corrected the record that there were two Molotov cocktails. So the judge's finding that the man he gave 17 years to was less culpable than my client, there's no basis for that finding. Remand to a different judge in this case, this is one of those cases where there are unusual circumstances. And this Court already found in United States v. Kwok, one of the defendants in this particular case, 302 F. 3rd. 1096, that remand to a different judge than Judge Shudd in this particular case was appropriate for the appearance of justice, and I submit that that is also the case here. Thank you very much, both counsel. The matter is disargued as submitted. Good morning.
judges: Thomas, Silverman, Clifton